IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 1:08-cv-2128 |
| | ) | |
| QUINCY BIOSCIENCE, LLC and | ) | Judge Kennelly |
| MARY ANN RIKSHEIM | ) | |
| | ) | Magistrate Judge Nolan |
| Defendant. | | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES, the Plaintiff, FEDERAL INSURANCE COMPANY, (hereinafter "Federal") by and through its attorneys, TRESSLER, SODERSTROM, MALONEY, & PRIESS, and as its First Amended Complaint for Declaratory Judgment against Defendants, QUINCY BIOSCIENCE, LLC AND MARY ANN RIKSHEIM, alleges as follows:[1]

### NATURE OF THE ACTION AND RELIEF SOUGHT

1. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Plaintiff seeks a declaration that it owes neither a duty to defend nor a duty to indemnify with regard to a putative class action lawsuit filed against Quincy Bioscience, LLC styled *Mary Ann Riksheim v. Quincy Bioscience*, No. 08 CH 2226 (Circuit Court of Cook County, Illinois) (hereinafter the "*Riksheim* suit").

---

[1] Federal was granted leave to file this First Amended Complaint by minute order dated April 18, 2008. (Doc. No. 5).

## PARTIES, JURISDICTION AND VENUE

### Plaintiff Federal Insurance Company

3. Federal is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in New Jersey. Federal is and was authorized to do business and was actually doing business at all relevant times in Illinois.

### Defendant Quincy Bioscience, LLC

4. According to its Articles of Organization on file and available to the public at the Wisconsin Department of Financial Services, Defendant Quincy Bioscience, LLC is a Limited Liability Company that was originally organized under the name QRC Bioscience, LLC. (See Exhibit A).

5. According to its Articles of Amendment on file and available to the public at the Wisconsin Department of Financial Services, Defendant, QRC Bioscience, LLC changed its name on or about December 20, 2005 to Quincy Bioscience, LLC. (See Exhibit B).

6. Quincy Bioscience, LLC's operating agreement is not a public record and is not available at the Wisconsin Department of Financial Services.

7. Although the operating agreement is not available, other public information cited below establishes that there are only three possible members of Quincy Bioscience, LLC: (1) Mark Underwood, (2) Mike Beaman and (3) Quincy Resource Group, Inc. As established below, all three are domiciled in the State of Wisconsin and, for the purposes of diversity jurisdiction, all three are citizens of the State of Wisconsin.

### Mark Underwood

8. The Dun and Bradstreet Company Profile for Quincy Bioscience, LLC (previously known as QRG Bioscience, LLC) identifies Mark Underwood as the "member." (See Exhibit C).

2

9. The website maintained by Quincy Bioscience, LLC on April 24, 2008 also identifies Mark Underwood as a "co-founder." (See Exhibit D).

10. Mark Underwood is a citizen of the United States of America.

11. According to a Patent Application he submitted to the United States Patent and Trademark Office (portions of which are attached hereto as Exhibit E), Mark Underwood lives in Glendale, Wisconsin.

12. According to the Limited Liability Company Annual Report filed on April 10, 2008, Quincy Bioscience, LLC maintains its principal office at 455 Science Drive, Suite 120, Madison, Wisconsin. (See Exhibit F).

13. According to an interview with Mark Underwood published in the University of Wisconsin Business News Wire, Quincy Bioscience, LLC also continues to maintain an office in Richfield, Wisconsin. (See Exhibit G).

14. As President and Co-Founder of Quincy Bioscience, LLC, Mark Underwood works at the Madison and Richfield, Wisconsin locations.

15. Quincy Bioscience, LLC does not maintain offices outside of Wisconsin.

16. Based on the fact that he lives in Wisconsin, works in Wisconsin and owns a business located only in Wisconsin, Federal alleges that Mark Underwood is physically present in Wisconsin and intends to continue making his home in Wisconsin. Consequently, Mark Underwood is a domiciliary of Wisconsin and is therefore a citizen of Wisconsin for the purposes of the diversity jurisdiction analysis pertaining to Quincy Bioscience, LLC.

**Mike Beaman**

17. Quincy Bioscience, LLC's website also identifies Mike Beaman as a "co-founder" as well as president. (See Exhibit D).

3

18. As co-founder and President of Quincy Bioscience, LLC, Mike Beaman works at the Madison, Wisconsin and Richfield, Wisconsin locations.

19. Mike Beaman also owns a company called Quincy Resources Group, Inc. According to this corporation's website, Quincy Resources Group, Inc. conducts operations in Richfield, Wisconsin and Jackson, Wisconsin. (See Exhibit H).

20. Mike Beaman is a citizen of the United States of America.

21. Mike Beaman lives in Wisconsin.

22. Based on the fact that he lives in Wisconsin, works in Wisconsin and owns at least two businesses located in Wisconsin, Federal alleges that Mark Underwood is physically present in Wisconsin and intends to continue making his home in Wisconsin. Consequently, Mike Beaman is a domiciliary of Wisconsin and is therefore a citizen of Wisconsin for the purposes of the diversity jurisdiction analysis pertaining to Quincy Bioscience, LLC.

### Quincy Resource Group, Inc.

23. At least one media report states that QRG Bioscience, LLC (now known as Quincy Bioscience, LLC) is a subsidiary of Quincy Resource Group. (See The Business Journal of Milwaukee, July 18, 2005, attached hereto as Exhibit I).

24. Quincy Resource Group, Inc. is incorporated in Wisconsin. (See Certificate of Status from Wisconsin's Department of Financial Institutions, attached hereto as Exhibit J).

25. Quincy Resource Group, Inc.'s website confirms that its principal place of business is in Jackson, Wisconsin. (See Exhibit H).

26. As it is incorporated in Wisconsin and maintains its principal place of business in Wisconsin, Quincy Resource Group, Inc. is a citizen of Wisconsin for the purposes of the diversity jurisdiction analysis pertaining to Quincy Bioscience, LLC.

27. As established above, all possible members of Quincy Bioscience, LLC are domiciled in Wisconsin and are all citizens of Wisconsin for the purposes of the diversity jurisdiction analysis pertaining to Quincy Bioscience, LLC.

28. No member of Quincy Bioscience, LLC is a citizen of either Indiana or New Jersey.

**Defendant Mary Ann Riksheim**

29. Defendant Mary Ann Riksheim is a citizen of the United States of America.

30. Defendant Mary Ann Riksheim lives in Illinois.

31. According to the website maintained by the Illinois Department of Professional Regulation on April 21, 2008, Defendant Mary Ann Riksheim is licensed by the State of Illinois as a Clinical Social Worker. (See Exhibit K).

32. According to the website maintained by the Illinois Department of Professional Regulation on April 21, 2008, Defendant Mary Ann Riksheim lives in Matteson, Illinois. (See Exhibit K).

33. According to her professional website maintained on April 14, 2008, Defendant Mary Ann Riksheim maintains offices and works in Olympia Fields, Illinois. (See Exhibit L).

34. Defendant Mary Ann Riksheim is the plaintiff in the underlying *Riksheim* suit, which she elected to file in the Circuit Court of Cook County, Illinois. In the *Riksheim* suit, she seeks, among other things, the protection of the Illinois Consumer Fraud Act. (See Exhibit M).

35. Based on the fact that she lives in Illinois, is licensed by the State of Illinois to serve as a clinical social worker in Illinois, works in Illinois, and owns a business in Illinois, Federal alleges that Defendant Mary Ann Riksheim is physically present in Illinois and intends to continue making her home in Illinois. Consequently, Defendant Mary Ann Riksheim is a

5

domiciliary of Illinois and is therefore a citizen of Illinois for the purposes of diversity jurisdiction.

36. Defendant Mary Ann Riksheim is joined in this action only as a potential necessary party.

37. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The defendants are citizens of Wisconsin and Illinois, whereas plaintiff is a citizen of Indiana and New Jersey. The amount in controversy is in excess of $75,000.00.

38. The total policy limits at issue in this insurance coverage action equal $1,000,000.00. A detailed description of the policies at issue is set forth in further detail below. (See Exhibit N).

39. Moreover, the potential cost of defense is substantially certain to exceed $75,000.00 because Quincy will have to undertake a number of tasks to defeat the allegations in the underlying class action suit, including, but not limited to, preparation and analysis of extensive discovery regarding class certification, depositions of critical witnesses regarding class certification issues, preparation of opposition to a class certification motion, preparation and analysis of written discovery regarding liability and damages issues, depositions of numerous class members regarding liability and damages issues, settlement analysis, trial preparation, trial, and appeal.

40. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c). The underlying *Riksheim* suit is venued in Cook County, Illinois, which is also where the alleged facsimile transmission at issue was received. (See Exhibit M)

## THE FEDERAL POLICY

41. Federal issued primary commercial general liability policy number 3584-96-38 to Quincy Bioscience, LLC (hereinafter "Quincy"), with an effective period of April 15, 2007 to April 15, 2008. A copy of the Federal policy is attached hereto as Exhibit N.

42. The Federal policy provides that Federal will pay damages that the insured becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed under an insured contract;

for "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.

43. The Federal policy provides further that this coverage only applies to such "bodily injury" or "property damage" that occurs during the policy period.

44. The Federal policy also provides that Federal will pay damages that the insured becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an insured contract;

for "advertising injury" or "personal injury" to which this coverage applies.

45. The Federal policy further provides that this coverage only applies to such "advertising injury" or "personal injury" caused by an offense that is first committed during the policy period.

46. The Federal policy provides that Federal will have the right and duty to defend the insured against a suit. However, the policy provides further that Federal has no duty to defend

7

any person or organization against any suit seeking damages to which the insurance does not apply.

    47.    The Federal policy defines "bodily injury" as

"Bodily injury" means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

    48.    The Federal policy defines "property damage" as:

"Property damage" means:

- physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
- loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

    49.    The Federal policy defines "advertising injury" as:

"Advertising injury" means injury, other than "bodily injury," "property damage" or "personal injury," sustained by a person or organization and caused by an

offense of infringing, in that particular part of your advertisement about your goods, products or services, upon their:

- copyrighted advertisement; or

- registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

50. The Federal policy defines "personal injury" as:

"Personal injury" means injury, other than "bodily injury," "property damage," or "advertising injury," caused by an offense of:

    A. false arrest, false detention or other false imprisonment;

    B. malicious prosecution;

    C. wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;

    D. electronic, oral written or other publication of material that:

        1. libels or slanders a person or organization (which does not include disparagement of goods, products, property or services);

        2. violates a person's right of privacy; or

    E. discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

51. The Federal policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

52. The Federal policy contains an Information Distribution Laws Exclusion, which provides:

With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any actual or alleged violation of:

- the United States of America CAN-SPAM Act of 2003 or any law amendatory thereof;
- the United States of America Telephone Consumer Protection Act (TCPA) of 1991 or any law amendatory thereof; or
- any other ordinance, regulation or statute relating to communicating, distribution, publication, sending or transmitting of content, information or material.

53. The Federal policy contains the following "expected or intended injury" exclusion applicable to "bodily injury" or "property damage:"

This insurance does not apply to "bodily injury" or "property damage" arising out of an act that:

- is intended by the insured; or
- that would be expected from the standpoint of a reasonable person in the circumstances of the insured;

to cause "bodily injury" or "property damage", even if the actual "bodily injury" or "property damage" is of a different degree or type than intended or expected."

54. The Federal policy contains the following "expected or intended injury" exclusion applicable to "advertising injury" or "personal injury:"

> This insurance does not apply to "advertising injury" or "personal injury" arising out of an offense, committed by or on behalf of the insured, that:
>
> - is intended by such insured; or
>
> - would be expected from the standpoint of a reasonable person in the circumstances of such insured;
>
> to cause injury.

55.  The Federal policy also excludes coverage for claims arising out of prior offenses. The policy provides:

> This insurance does not apply to "advertising injury" or "personal injury" arising out of any offense first committed before the beginning of the policy period.

## THE UNDERLYING SUIT

56.  Mary Ann Riksheim filed the *Riksheim* suit on January 17, 2007. A copy of the complaint is attached hereto as Exhibit M.

57.  The plaintiff in the *Riksheim* Suit seeks damages and injunctive relief arising out her receipt of an unsolicited facsimile in alleged violation of the Telephone Consumer Protection Act ("TCPA") and the Illinois Consumer Fraud Act ("ICFA").

58.  The plaintiff in the *Riksheim* suit also attempts to establish a class action suit on behalf of certain similarly situated persons.

## COUNT ONE

## FOR DECLARATORY JUDGMENT ON THE DUTY TO DEFEND

59.  Federal incorporates paragraphs 1 - 58 as if fully set forth herein.

60.  Federal seeks a declaration that it does not owe a duty to defend to Quincy for the following reasons:

11

    A. The Information Distribution Laws Exclusion bars even the potential for coverage for the *Riksheim* suit.

    B. The *Riksheim* suit does not allege "bodily injury," "property damage," "personal injury," or "advertising injury" as those terms are defined in the policy.

    C. Even if the *Riksheim* suit did allege "bodily injury," "property damage," "advertising injury," or "personal injury," which it does not, the Expected or Intended Exclusions bar coverage.

    D. Even if the *Riksheim* suit did allege "bodily injury" or "property damage," which it does not, the suit does not allege an "occurrence."

    E. Even if the *Riksheim* suit did allege "advertising injury," or "personal injury," which it does not, the Prior Offenses Exclusion bars coverage.

    F. The policies in question do not provide coverage for injunctive relief, equitable relief or attorneys fees incurred by the underlying plaintiffs.

COUNT TWO

FOR DECLARATORY JUDGMENT ON THE DUTY TO INDEMNIFY

61.    Federal incorporates paragraphs 1 - 58 as if fully set forth herein.

62. Federal seeks a declaration that it does not owe a duty to indemnify to Quincy for the following reasons.

    A. The Information Distribution Laws Exclusion Bars coverage for the *Riksheim* suit.

12

B. The *Riksheim* suit does not involve "bodily injury," "property damage," "personal injury," or "advertising injury" as those terms are defined in the policy.

C. Even if the *Riksheim* suit did involve "bodily injury," "property damage," "advertising injury," or "personal injury," which it does not, the Expected or Intended Exclusions bar coverage.

D. Even if the *Riksheim* suit did involve "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence."

E. Even if the *Riksheim* suit did involve "advertising injury," or "personal injury," which it does not, the Prior Offenses Exclusion bars coverage.

F. The policies in question do not provide coverage for injunctive relief, equitable relief or attorneys fees incurred by the underlying plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Federal Insurance Company respectfully requests that judgment be entered in its favor and against Quincy as follows:

A. Declaring that Federal does not owe a defense obligation to Quincy with regard to the *Riksheim* suit;

B. Declaring that Federal does not owe an indemnity obligation to Quincy with regard to the *Riksheim* suit;

C. Awarding Federal the costs of this suit; and

D. Awarding Federal such other and further relief as the Court deems just.

FEDERAL INSURANCE COMPANY

/s/ Daniel J. Cunningham
Daniel J. Cunningham

TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor,
233 South Wacker Drive
Chicago, Illinois 60606-6308
(312) 627-4000;
Fax: (312) 627-1717
Email: dcunningham@tsmp.com